UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATOSHA N., <br>         Plaintiff, <br>     v. <br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br>         Defendant. | Case No. ED CV 18-2475-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On November 26, 2018, plaintiff Latosha N. filed a complaint against defendant, the Commissioner of Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the

administrative law judge ("ALJ") properly included all limitations opined by the examining physician in his residual functional capacity ("RFC") determination; (2) whether the ALJ properly considered witness testimony; and (3) whether plaintiff is entitled to a new hearing because her case was adjudicated by an unconstitutionally appointed ALJ.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 9-25; *see* Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-22.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to cite legally sufficient reasons for not including certain limitations in his RFC determination and failed to properly consider witness testimony.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 37 years old on the alleged disability onset date, completed high school and has a licensed vocational nurse certification.  AR at 49, 75, 398.  She has past relevant work as a nurse assistant, licensed practical nurse, and driver.  *Id*. at 55.

On October 22, 2014, plaintiff filed applications for a period of disability, DIB, and SSI due to a stroke, amnesia, and knee, shoulder, and hip problems.  *Id*. at 75-76, 85-86.  The applications were denied initially and upon reconsideration, after which plaintiff filed a request for a hearing.  *Id*. at 133-49.

On August 28, 2017, the ALJ held a hearing.  *Id*. 41-74.  Plaintiff, represented by counsel, appeared and testified at the hearing.  *Id*.  The ALJ also heard testimony from Veronica Henson, plaintiff's mother, and Sandra Fioretti, a

vocational expert. *Id*. at 55, 64-73. On December 8, 2017, the ALJ denied plaintiff's claims for benefits. *Id*. at 21-34.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since December 25, 2012, the alleged onset date. *Id.* at 23.

At step two, the ALJ found plaintiff suffered from the following severe impairments: stroke; slight decreased strength in the right arm and right leg secondary to cerebrovascular accident; osteoarthritis of the hips; lumbosacral musculoligamentous strain; affective disorder/depression; and cognitive disorder. *Id*. at 24.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform light work with the limitations that plaintiff could: lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for six hours out of an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance and stoop; and frequently kneel, crouch, and crawl. *Id*. at 26. The ALJ further determined plaintiff should be limited to jobs with: simple, routine, and repetitive tasks; simple work-related decisions; little change in work setting as to pace or process; and only occasional interaction with the general public. *Id*.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1 | The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a nurse assistant, licenced practical nurse, and driver. *Id*. at 31-32.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including toy assembler, plastic hospital products assembler, and small products assembler II. *Id*. at 33. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 34

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 2-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Failed to Properly Include All Purportedly Accepted Limitations in His RFC Determination

Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly include all of Dr. Margaret Donohue's opined limitations in his RFC determination. P. Mem. at 9-15. Specifically, plaintiff argues the ALJ erred by failing to given any explanation for not adopting all of the opined limitations assessed by consultative examiner, Dr. Donohue, despite stating he gave substantial weight to her opinion. *Id*.

Residual functional capacity is what one "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner reaches an RFC determination by reviewing and considering all of the relevant evidence. *Id.* Among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians;

---

[2] All regulations cited in this opinion are applicable to claims filed before March 27, 2017.

5

(2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

1. **Dr. Margaret Donohue**

Dr. Donohue, an examining psychologist,[3] examined plaintiff on September

---

[3] Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Accordingly, for ease of reference, the court will refer to all psychologists as physicians.

6

11, 2015. AR at 396-402. Dr. Donohue reviewed plaintiff's medical records, conducted a mental status examination, and administered tests. *See id*. Dr. Donohue observed plaintiff's speech was dysarthric, she had problems finding words, and she had problems with misusing words. *Id*. at 397. Plaintiff was able to spell music but when asked to spell it in reverse, she stopped after "c" and burst into tears. *Id*. Plaintiff was able to recall words and repeat a complex phrase, but displayed issues with processing speed and impaired judgment. *Id*. at 399. Plaintiff's percentile rank was 25th in part A of the Trail Making Test and below the 10th on part B, between one and four on the Wechsler Adult Intelligence Scale, and 0.1 percentile rank on the Wechsler Memory Scale. *See id*. at 399-400.

Based on the examination, history, records, and tests, Dr. Donohue diagnosed with cognitive disorder, not otherwise specified; major depression; and borderline intellect. *Id*. at 400-01. Dr. Donohue noted plaintiff's functioning was in the borderline range of ability due to her processing speed and her intellect testing was in the mildly intellectually deficient range due to problems with motor speed. *Id*. Dr. Donohue opined plaintiff would have mild limitations in her ability to: understand, remember, and carry out short, simplistic instructions; and make simplistic work-related decisions without special supervision. *Id*. at 401. Dr. Donohue opined plaintiff would have moderate limitations in her ability to: understand, remember, and carry out detailed and complex instructions; comply with job rules such as safety and attendance; respond to change in a normal workplace setting; and interact appropriately with supervisors, coworkers, and peers on a consistent basis. *Id*. Finally, Dr. Donohue opined plaintiff would have severe limitations in maintaining persistence and pace in a normal workplace setting. *Id*.

**2.     Dr. George Grubbs**

Dr. George Grubbs, a state agency physician, reviewed plaintiff's medical

7

records and Dr. Donohue's opinion. *See id.* at 102-03. Dr. Grubbs opined plaintiff would be able to complete simple tasks, make work decisions, be socially appropriate, and accept critique from supervisors. *Id.* at 108. But plaintiff would have difficulties maintaining attention and concentration for extended periods, carrying out detailed instructions, and cooperating with others. *Id.* Dr. Donohue opined plaintiff's mental impairment did not appear to be of "disabling proportions" and plaintiff could perform simple, unskilled repetitive assignments and tasks. *Id.* at 109.

### 3. The ALJ's Findings

In reaching his mental RFC determination, the ALJ gave great weight to Dr. Donohue's and Dr. Grubbs's opinions. *Id* at 30-31. With respect to Dr. Donohue, the ALJ noted Dr. Donohue was able to examine plaintiff and her opinion was supported by the objective medical evidence and treatment records.

Plaintiff argues that, despite expressly giving Dr. Donohue's opinion great weight, the ALJ failed to adopt all of her assessed limitations, specifically the moderate limitations in plaintiff's ability to interact appropriately with supervisors, coworkers, and peers on a consistent basis; moderate limitations in her ability comply with attendance; and severe limitations in her ability to maintain persistence and pace in a normal workplace setting. P. Mem. at 10-14; *see* AR at 401. Defendant disagrees and contends the ALJ properly translated the opined limitations found by Dr. Donohue and Dr. Grubbs into his RFC determination. D. Mem. at 5-7. The court agrees the ALJ erred in failing to include the limitations without explanation.

First, with regard to Dr. Donohue's opinion that plaintiff would have moderate limitations in her ability to interact appropriately with supervisors, coworkers, and peers on a consistent basis, the ALJ failed to include such a limitation in his RFC determination. (Dr. Grubbs also opined plaintiff would have

difficulties cooperating with others. AR at 108.) Although the ALJ limited plaintiff to only occasional interaction with the general public, he failed to provide any reason, much less a clear and convincing reason, why he failed to similarly limit plaintiff's interactions with supervisors and coworkers.

Second, Dr. Donohue opined plaintiff would be moderately limited in her ability to comply with job rules such as attendance. *Id*. at 401. Defendant correctly notes Dr. Grubbs's opinion contradicted Dr. Donohue's opinion in this regard. D. Mem. at 6. Dr. Grubbs opined plaintiff was not significantly limited in her ability to maintain regular attendance. *Id*. at 107. Defendant also correctly notes that an ALJ is not required to adopt a medical opinion in its entirety. *See Magallanes*, 881 F.2d at 753-754 (an ALJ does not have to adopt a physician's opinion in its entirety and can properly reject portions of it). Nevertheless, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting a contradicted opinion. The ALJ failed to do so here.

Finally, defendant contends the ALJ's limitation of plaintiff to work that required "little change in work setting as to pace or process" sufficiently incorporated Dr. Donohue's opinion that plaintiff was severely limited in her ability maintain persistence or pace. D. Mem at 5; AR at 401. Defendant's interpretation of the two limitations as equivalent is plausible. It is also possible the ALJ's "little change in work setting as to pace or process" limitation incorporated Dr. Donohue's opinion that plaintiff was limited in her ability respond to change in a workplace setting rather than her ability maintain pace and persistence throughout the day. Because the court is remanding this case, the ALJ may clarify his limitation.

In sum, the ALJ failed to provide legally sufficient reasons supported by substantial evidence for omitting certain of Dr. Donohue's opined limitations in his RFC determination.

## B. The ALJ Failed to Properly Consider Witness Testimony

Plaintiff argues the ALJ failed to properly consider her and Veronica Henson's testimony. P. Mem. at 15-20. Specifically, plaintiff contends the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting her credibility and germane reasons for rejecting Henson's testimony. *Id.*

### 1. Plaintiff's Testimony

At the hearing, plaintiff testified she was often at a loss for words and had problems with memory, concentration, and focus. AR at 59, 62. Plaintiff stated her mother took her grocery shopping and to her appointments, kept track of her appointments, and paid her bills. *Id.* at 59-60. Plaintiff could take care of things around the house such as tidying up and taking care of the dog. *Id.* at 60. In her Function Report, dated April 4, 2015, plaintiff stated she took a long time to make simple decisions, had slow comprehension, could not handle stressful situations, and got agitated easily. *Id.* at 271, 277. On a daily basis, plaintiff dropped off and picked up her daughter from school, performed household chores, and cooked. *Id.* at 272.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen*, 80 F.3d at 1281; *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). An ALJ may consider several factors in weighing a claimant's testimony, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 27. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ provided two reasons for discounting plaintiff's testimony: (1) her activities of daily living were inconsistent with her alleged symptoms; and (2) her alleged limitations were inconsistent with the objective medical evidence.

Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, plaintiff's activities were not inconsistent with her alleged symptoms. Plaintiff's primary alleged limitations are difficulties with comprehension, communication, focus, and making decisions. The ability to cook, do housework, drop off and pick up her daughter, grocery shop with her mother, and pay bills were not inconsistent with her alleged symptoms. Nor were the activities necessarily transferrable to a work setting.

The ALJ's second reason for the ALJ's adverse credibility finding – the alleged limitations were inconsistent with the objective medical evidence – was similarly unsupported by substantial evidence. AR at 27-28; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the lack of corroborative objective medical evidence may be one factor in evaluating a claimant's credibility). The ALJ noted plaintiff did not complain of memory deficits at her January 21, 2014 appointment and the physician observed a normal attention span and concentration. AR at 28. The failure to complain of memory deficits and observations at one appointment hardly constitute substantial evidence.[4] Prior treatment records revealed complaints of memory problems, as did Dr. Donohue's examination. *See id*. at 344, 400, 490.

In sum, the ALJ failed to cite clear and convincing reasons supported by substantial evidence for discounting plaintiff's credibility.

### 2. **Veronica Henson's Testimony**

Plaintiff also contends the ALJ failed to properly consider the testimony of her mother, Veronica Henson. P. Mem. at 19-20.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R.§§ 404.1513(d)(4), 416.913(d)(4) (explaining that the Commissioner will consider all evidence from "non-medical sources[,]" including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy"). The ALJ may only discount the testimony of lay witnesses if he provides

---

[4] To the extent the ALJ referred to inconsistencies between plaintiff's alleged physical limitations and the objective medical evidence, plaintiff, through her representative, stated it was her cognitive deficits that rendered her unable to work. AR at 47-48.

specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so.").

At the hearing, Veronica Henson testified she helped plaintiff with shopping, gave her reminders, and took care of her appointments. AR at 64, 67, 69. Although plaintiff could handle simple finances, Henson would have to explain her bills to her. *Id*. at 67. Henson further testified that plaintiff took longer than before to comprehend things and communicate what she is thinking, was no longer social because she could not handle noise, and was easily overwhelmed. *See id*. at 65-70. In a Function Report, dated April 4, 2015, Henson stated plaintiff was afraid to be around a lot of people, could not handle stressful situations well, and was child-like. *See id*. at 266-68.

The ALJ stated Henson's statement did not establish plaintiff was disabled and the accuracy of her statements was "questionable" because she was not medically trained. *Id*. at 31. The ALJ also stated he could not give substantial weight to Henson's statements because they were inconsistent with the preponderance of the medical opinions and observations. *Id*. Neither of the ALJ's reasons is germane and supported by evidence.

First, the ALJ discounted Henson's statements because she was not medically trained. *Id*. Contrary to the ALJ's implication, Henson did not opine plaintiff was disabled. Henson simply provided her observations of plaintiff's symptoms and limitations, which the ALJ was required to consider. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); SSR 06-03p (the agency will consider all relevant evidence). Rejection of Henson's observations on the basis that she was not medically trained amounts to a wholesale rejection of all lay

opinions and therefore was not germane to her. *See Smolen*, 80 F.3d at 1289 (the ALJ's rejection of plaintiff's family member's testimony as biased "amounted to a wholesale dismissal of the testimony of all [the family] witnesses as a group and therefore does not qualify as a reason germane to each individual who testified").

The ALJ's second reason for rejecting Henson's statements – they were inconsistent with the medical opinions and observations – was not supported by the evidence. *Id*. at 31. An ALJ may reject lay testimony if it is *inconsistent* with medical evidence. *Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). But here, Henson's statements were not inconsistent with the evidence. As stated above, other than the January 2014 treatment note the ALJ cites in his decision, plaintiff exhibited mental deficits at other examinations. *See id*. at 344, 400, 490. Most important, Henson's statements were consistent with Dr. Donohue's examination findings and opinion, which the ALJ gave great weight. Dr. Donohue observed problems with expression, memory, and processing. *See id*. at 397-400.

Accordingly, the ALJ failed to provide germane reasons supported by evidence in the record for discounting Henson's testimony.

### C. **Plaintiff Forfeited Her Appointments Clause Challenge**

Plaintiff argues her case should be remanded for a new hearing before a different ALJ because an improper and unconstitutionally appointed ALJ adjudicated her case. P. Mem. at 20-25.

Plaintiff relies on *Lucia v. SEC*, __ U.S. __, 138 S. Ct. 2044, 201 L. Ed. 2d 464 (2018), which holds that ALJs of the Securities and Exchange Commission are "Officers of the United States" subject to the Appointments Clause in Article II of the United States Constitution and therefore were required under the Appointments Clause to be appointed by the President, a court of law, or a head of department.

*Id.* at 2055. The remedy for one who challenges "the constitutional validity of the appointment of an officer who adjudicates his case" is a new hearing before a new ALJ, even if the ALJ who previously heard the case was now constitutionally appointed. *Id.* (citation and quotation marks omitted). But the Supreme Court also recognized that to obtain relief based on a challenge to the validity of an ALJ's appointment, the challenge must be timely made. *Id.* In *Lucia*, the petitioner's challenge was timely because he "contested the validity of [the ALJ's] appointment before the Commission." *Id.*

Although the Ninth Circuit has not addressed whether *Lucia* applies in the context of the Social Security Administration ("SSA"), it appears probable that ALJs of the SSA will be found to be inferior officers subject to the Appointments Clause. An executive order issued in response to the *Lucia* decision concluded that "at least some – and perhaps all – ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause." Exec. Order No. 13843, 83 Fed. Reg. 32755 (July 13, 2018). The Acting Commissioner of Social Security ratified the appointment of ALJs and approved their appointments as her own,[5] and the SSA issued SSR 19-1p to provide guidance to challenges to the ALJ's authority. The Third Circuit, the only Court of Appeals to have addressed *Lucia* and Appointments Clause challenges to ALJs of the SSA, noted the Commissioner conceded the issue. *Cirko v. Comm'r*, 948 F.3d 148, 152 (3d Cir. 2020).

Nevertheless, the court does not now decide whether *Lucia* applies to SSA ALJs because plaintiff forfeited the claim. Plaintiff did not raise the validity of the ALJ's appointment at the administrative level. Plaintiff acknowledges this, but argues the challenge was nonetheless timely. P. Mem. at 22. Plaintiff cites a handful of out of circuit district court cases which held that a claimant did not have to exhaust an Appointments Clause challenge before the agency. P. Mem. at 22-

---

[5] *See* https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM

15

24; *see Mann v. Berryhill*, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018) (Appointments Clause challenges fall in the "'category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below.'") (quoting *Freytag v. I.R.S.*, 501 U.S. 868, 879-80, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991)); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019) (there is no authority indicating an SSA ALJ would be authorized to resolve the constitutionality of his own appointment and the Supreme Court does not require issue exhaustion at the Appeals Court level) (citing *Sims v. Apfel*, 530 U.S. 103, 112, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000)); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349, 351 (E.D.N.C. 2019) (neither the statutes nor regulations require plaintiff to raise the issue before the ALJ); *Cluclasure v. Comm'r*, 375 F. Supp. 3d 559 (2019).

Only one Circuit Court of Appeals, the Third Circuit, has directly addressed this issue. In *Cirko*, plaintiffs first raised the Appointments Clause challenge in its appeal to the district court. 948 F.3d at 152. The Third Circuit determined there was no statutory or regulatory exhaustion requirement that governs SSA proceedings. *Id.* at 153. Assessing three factors – the nature of the claim, the characteristics of the SSA review, and the interests involved – the Third Circuit held that exhaustion of an Appointments Clause challenge was not required in the SSA context. *Id.* at 153. First, exhaustion was generally inappropriate "where a claim serves to vindicate constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers." *Id.* Second, it found the Supreme Court's reasoning in *Sims*, which held that exhaustion of issues before the Appeals Council is not required – but explicitly did not decide whether a Social Security claimant must exhaust issues before the ALJ to obtain judicial review (*see Sims*, 530 U.S. at 107, 112) – was instructive. *Cirko*, 948 F.3d at 155. Like Appeals Council

hearings, the regulations did not have an express exhaustion requirement and ALJ hearings are "inquisitorial and driven by the agency rather that the claimant," who need not even state his or her case. *Id*. at 155-56. Finally, the individual interests outweigh the governmental interests. *Id*. at 156-57. Unlike an adversarial proceeding, the Commissioner has the primary responsibility for identifying and developing the issues and the claimant is not required to develop facts or make arguments. *Id*. An exhaustion requirement would therefore impose an "unprecedented burden" on SSA claims. *Id*. at 156. Meanwhile, the government's interest in requiring exhaustion is low because constitutional questions are outside the agency's expertise and the agency is incapable of of providing. *Id*. at 158.

The Ninth Circuit has not ruled on this precise issue. But most district courts within the Ninth Circuit have reached the opposite conclusion from the Third Circuit's, albeit prior to *Cirko*. *See, e.g.*, *Kathleen S. v. Saul*, 2020 WL 353602, at *3 (S.D. Cal. Jan. 21, 2020); *Samuels v. Comm'r*, 2019 WL 4479534 (N.D. Cal. Sept 18, 2019) (citing cases where court rejected the argument that a claimant did not have to exhaust an Appointments Clause challenge); *Morrow v. Berryhill*, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 209) (noting the Ninth Circuit confirmed the general proposition that a social security claimant must exhaust issues before the ALJ); *Hughes v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").

Although the Ninth Circuit has not determined whether a social security claimant must exhaust an Appointments Clause challenge before the ALJ, the Ninth Circuit has more generally held, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir.

1999). At least one social security claimant argued that the Supreme Court's decision in *Sims* overruled *Meanel*, but the Ninth Circuit rejected that argument, noting that *Sims* was limited to the question of whether claimants needed to additionally exhaust issues before the Appeals Council and so did not control. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Thus, *Meanel* remains the law of the circuit. *Meanel* did not concern a constitutional challenge, but it is binding on this court.

Further, as noted, in *Lucia*, the Supreme Court explicitly found that to obtain relief from an Appointments Clause challenge, the challenge must be timely made, as was the challenge in that case, having been first raised before the Commission. *Lucia*, 138 S. Ct. at 2055. The Supreme Court did not define the limits of timely challenges in SEC cases, much less in social security cases. But to the extent *Lucia* applies at all to social security cases, timeliness is plainly a requirement. The court here is persuaded to follow the other district courts in the Ninth Circuit and the Ninth Circuit's existing law that raising a claim in a social security case for the first time on appeal to the district court is not timely; the issue must first be raised before the ALJ. *See Shaibi*, 883 F.3d at 1109; *Meanel*, 172 F.3d at 1115. This applies to Appointments Clause challenges as well.

Accordingly, because plaintiff forfeited her challenge to the validity of the ALJ's appointment here when she did not raise her challenge at the administrative level, she is not entitled to relief on her Appointments Clause challenge.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been

fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to address the issues described above. On remand, the ALJ shall reconsider the three limitations it did not adopt from Dr. Donohue's opinion and either credit the opinions or provide legally sufficient reasons supported by substantial evidence for rejecting them; reconsider plaintiff's testimony and either credit her subjective complaints or provide clear and convincing reasons for rejecting them; and reconsider the lay testimony and either credit it or provide germane reasons supported by substantial evidence for rejecting it. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **RECOMMENDATION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: April 13, 2020

SHERI PYM
United States Magistrate Judge